IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HERO TIERA T. SMITH, f/k/a TIERA T.       )
SMITH,                                     )
                                           )
                    Petitioner,            )
                                           )
            v.                             )      C.A. No.  18-123 (MN)
                                           )
KIMBERLY HUGHEY, Warden, and               )
ATTORNEY GENERAL OF THE                    )
STATE OF DELAWARE,                         )
                                           )
                    Respondents.           )

### <u>MEMORANDUM OPINION</u>

Hero Tiera T. Smith – Pro se Petitioner; Formerly Represented on Remand by Thomas A. Dreyer – Attorney for Petitioner.

Kathryn J. Garrison, Deputy Attorney General, Delaware Department of Justice, Dover, DE – Attorney for Respondents.

February 2, 2026
Wilmington, Delaware

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE:**

Petitioner Hero Tiera T. Smith, formerly known as Tiera T. Smith, filed a pro se Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 3). After Respondents filed an Answer (D.I. 19) to which Petitioner filed a pro se Reply (D.I. 21), the Court denied the Petition on its merits without deciding if equitable tolling saved the Petition from being time-barred. (D.I. 24). The Third Circuit Court of Appeals vacated the Court's Order and remanded for the Court to determine, prior to any ruling on the merits, if Petitioner is entitled to equitable tolling. (D.I. 33). Petitioner subsequently filed a Motion for an Evidentiary Hearing. (D.I. 40). Respondents filed a Response (D.I. 42) and supplemented the record with Petitioner's housing and medical records (D.I. 44; D.I 46; D.I. 52). The Court concluded that it could determine whether Petitioner is entitled to equitable tolling based on the supplemented record and denied the motion for a hearing. (D.I. 47). The parties then submitted memoranda addressing the applicability of equitable tolling. (D.I. 49; D.I. 50). For the reasons discussed, the Court dismisses the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I.    **BACKGROUND**[1]

A.    **State Court Proceedings**

On August 22, 2008, Petitioner pleaded guilty to second-degree murder, first-degree assault, and two counts of possession of a firearm during the commission of a felony. (D.I. 17-1 at 4, Entry No. 40; D.I. 17-3 at 23; D.I. 17-9 at 41-48). On December 5, 2008, Petitioner was sentenced to life imprisonment without the possibility of parole, plus 75 years. (D.I. 17-1 at 5,

---

[1]    The facts recited herein are limited to those necessary to explain the Court's decision. Additional details can be found in the Court's earlier memorandum opinion, *Smith v. Caple*, C.A. No. 18-123 (MN), 2021 WL 1226495 (D. Del. Mar. 31, 2021), and in the Superior Court of Delaware's memorandum opinion denying postconviction relief, *State v. Smith*, 2017 WL 902149 (Del. Super. Ct. Mar. 6, 2017).

Entry No. 44; D.I. 17-3 at 25-49). Petitioner filed a timely pro se Notice of Appeal on January 5, 2009. (D.I. 17-3 at 50-52):

> [Petitioner] says that she had not had any communication from trial counsel between her sentencing hearing on December 5, 2008, and her pro se appeal. In addition to filing her appeal, she also sent trial counsel a letter asking him to help her file a motion to modify her sentence before the 90-day deadline for such a motion passed, and she asked him to let her know any other steps she could take to get her sentence overturned or reduced. On January 6, 2009, the Delaware Supreme Court, through its clerk's office, instructed trial counsel to file a written statement by January 16, 2009, "indicating that [he] recognize[d] [his] continu[ed] obligation under Supreme Court Rule 26(a) to represent Ms. Smith in the . . . appeal." A copy of the letter was sent to [Petitioner], who then sent trial counsel a letter dated January 7, 2009, in which she referred to the Court's letter and told him that she needed his assistance and hoped that he would prepare himself to help her. [Petitioner] contends trial counsel never responded to the Supreme Court letter, and there is nothing in the record to suggest otherwise.
>
> Still, on January 27, 2009, trial counsel did meet with [Petitioner] via video conference. In his affidavit, he testified that, during their discussion, "it was determined that [Smith] was, in fact, seeking a reduction in sentence and was not seeking review of any errors of law or procedure. Accordingly, on advice of counsel, [Smith] decided to withdraw the appeal and pursue the Motion for a Modification in [an] effort to reduce her sentence." [Petitioner] executed an Affidavit Requesting Dismissal of Appeal. According to [Petitioner], trial counsel "gave her only 20 minutes" to decide whether to sign it.

*Smith v. Warden Baylor Womens Corr. Inst.*, No. 21-1880, 2024 WL 808971, at *1 (3d Cir. Feb. 7, 2024) (citations omitted). On January 29, 2009, trial counsel filed a motion to dismiss the appeal, along with the supporting affidavit. *See id.*; D.I. 17-3 at 54, 58. That same day, the Delaware Supreme Court granted the motion and closed the case. (D.I. 17-3 at 55-57).

Trial counsel filed a Motion for Modification of Sentence on February 27, 2009. (D.I. 17-1 at 5, Entry No. 46; D.I. 17-3 at 59-64). The Delaware Superior Court denied the motion on March 30, 2009. (D.I. 17-1 at 5, Entry No. 47). Petitioner did not file an appeal and claims that

trial counsel did not notify or send her copies of the motion or order denying it. *Warden Baylor Womens*, 2024 WL 808971, at *1. Petitioner says that, in May 2009, she visited the prison law library and, based on the paralegal's advice, directly contacted the Sussex County Superior Court Prothonotary and learned that the motion had been denied. (D.I. 17-1 at 5, Entry No. 48; D.I. 17-3 at 95; D.I. 40 at 11; D.I. 49 at 2, 6)

> Years passed. Then, in April 2014, [Petitioner] filed a pro se motion for state postconviction relief. New counsel was appointed to represent her, and in June 2015 that counsel filed an amended motion. The Superior Court held an evidentiary hearing, and denied [Petitioner's] motion and amended motion for postconviction relief. On January 2, 2018, the Delaware Supreme Court affirmed the denial.

*Warden Baylor Womens*, 2024 WL 808971, at *1 (footnote omitted) (citations omitted).

### B.   Federal Court Proceedings

Petitioner filed the instant pro se Petition on January 15, 2018.[2] (D.I. 3). The Petition includes four grounds for relief: (1) defense counsel provided ineffective assistance by failing to investigate Petitioner's claim of self-defense; (2) Petitioner's second degree murder sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment; (3) defense counsel provided ineffective assistance by failing to appeal Petitioner's sentence and by failing to adequately argue her motion for modification of sentence; and (4) defense counsel provided ineffective assistance by failing to adequately investigate and present mitigating evidence at Petitioner's sentencing. *See Smith v. Caple*, C.A. No. 18-123 (MN), 2021 WL 1226495, at *5 (D. Del. Mar. 31, 2021); D.I. 3 at 6, 8, 9, 11. In their Answer, Respondents asserted that the

---

[2]    The docket shows the Petition was filed on January 22, 2018, however, the Petition indicates that it was placed in the prison mailing system on January 15, 2018. The prison mailbox rule provides that the date on which a pro se prisoner delivers documents to prison authorities for mailing is considered the filing date. *See United States v. Brookins*, 132 F.4th 659, 663 n.2 (3d Cir. 2025) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)).

Petition was untimely. (D.I. 19 at 12-15). Petitioner filed a pro se Reply. (D.I. 21). Given that the Delaware Superior Court considered Petitioner's state motion for postconviction relief under an exception to the state limitations period, the Court declined to decide whether equitable tolling saved Petitioner's otherwise untimely Petition and instead denied the Petition on its merits. *See Caple*, 2021 WL 1226495, at *7.

Petitioner filed a pro se Notice of Appeal. (D.I. 27; D.I. 31). Treating Petitioner's notice of appeal as a request for a certificate of appealability ("COA"), the Third Circuit granted a COA on the issue of whether Petitioner's counsel was ineffective for advising her to withdraw her direct appeal. *See Warden Baylor Womens*, 2024 WL 808971, at *3. The Third Circuit did not address that issue, however, and instead concluded that this Court erred in reaching the merits of Petitioner's claims without first addressing whether she was entitled to equitable tolling. *See id.* Accordingly, the Third Circuit vacated the denial of the Petition and remanded for consideration whether Petitioner is entitled to equitable tolling and, if so, addressing of the merits of her ineffective assistance of counsel claim regarding withdrawal of her appeal. *See id.* at *6, 7. The Third Circuit framed the threshold issue on remand to be whether Petitioner was reasonably diligent in pursuing her rights:

> Trial counsel's advice to withdraw the appeal certainly appears to be the type of indefensible lawyering that could constitute an extraordinary circumstance for the purposes of equitable tolling. But whether Smith was reasonably diligent in pursuing her rights – the other prong of equitable tolling – is unclear based on the record before us and requires fact finding that should be undertaken by the District Court. We can only speculate about the delay, and we decline to do that, so we will remand.

*Id.* (citation omitted).

## II.    GOVERNING LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a

petition for a writ of habeas corpus pursuant to § 2254 must be filed within one year of, *inter alia*,

"the date on which the judgment became final by the conclusion of direct review or the expiration

of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).[3]  AEDPA's limitations period

is subject to statutory and equitable tolling.  *See* 28 U.S.C. § 2244(d)(2) (statutory tolling); *Holland*

*v. Florida*, 560 U.S. 631 (2010) (equitable tolling).

Equitable tolling is applied sparingly and "only in the rare situation where [it] is demanded

by sound legal principles as well as the interests of justice,"  *See Martin v. Adm'r New Jersey State*

*Prison*, 23 F.4th 261, 272 (3d Cir. 2022) (citing *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005)

(quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998))).  Whether to apply equitable

tolling must be made on a case-by-case basis.  *See, e.g.*, *Holland*, 560 U.S. at 649-50.  "A

'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

timely filing."  *E.g.*, *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418

(2005)).

"To satisfy the diligence prong, a petitioner must demonstrate that he has been pursuing

his rights with 'reasonable diligence in the circumstances.'"  *See Martin*, 23 F.4th at 273 (citing

*Wilson v. Beard*, 426 F.3d 653, 660 (3d Cir. 2005) (quoting *Schlueter v. Varner*, 384 F.3d 69, 74

(3d Cir. 2004)).  Although a petitioner need not have acted with "maximum feasible diligence,"

he also cannot have been "sleeping on his rights."  *See id.* (citing *Munchinski v. Wilson*, 694 F.3d

308, 331 (3d Cir. 2012) (quoting *Holland*, 560 U.S. at 653, and *Mathis v. Thaler*, 616 F.3d 461,

---

[3]    The remaining provisions of § 2244(d) concerning the running of the limitations period,
§ 2244(d)(1)(B) – (D), do not apply in Petitioner's case.

474 (5th Cir. 2010))).  The  reasonable diligence requirement applies to both a petitioner's filing for federal habeas relief and the steps taken to exhaust available state court remedies.  *See id.*  Lack of legal knowledge or training does not alone justify equitable tolling.  *See id.* (quoting *Ross v. Varano*, 712 F.3d 784, 799-800, 802 (3d Cir. 2013)).

## III.  <u>DISCUSSION</u>

Petitioner's conviction became final on January 29, 2009, the date the Delaware Supreme Court granted voluntary dismissal of her direct appeal.  *See Caple*, 2021 WL 1226495, at *5. Petitioner's AEDPA limitations period lapsed in 2010,[4] but she did not file her Petition until January 2018.  *Warden Baylor Womens*, 2024 WL 808971, at *4.  Statutory tolling does not save the Petition from being time-barred.  *See id.* at *4-5.  Petitioner, however, claims she is entitled to equitable tolling.[5]  The period for which she seeks equitable tolling is almost nine years after her conviction became final and almost eight years after her AEDPA limitations period lapsed.  For the following reasons, the Court finds that Petitioner has failed to demonstrate diligence that would entitle her to equitable tolling and allow the Court to extend the filing deadline for the duration of the period of delay the record reveals.

---

[4]    The Court previously calculated that, after applying the available statutory tolling, the AEDPA limitation period expired on April 2, 2010.  *See Caple*, 2021 WL 1226495, at *6. Petitioner does not apply statutory tolling and suggests February 1, 2010 as the deadline. (D.I. 49 at 6).  The Court notes that the discrepancy is immaterial in determining the outcome of the case.

[5]    Although respondents concede that trial counsel's advice to withdraw Petitioner's appeal was objectively unreasonable (D.I. 50 at 26-30), the merit of Petitioner's underlying claim does not eliminate Petitioner's obligation to establish entitlement to equitable tolling. According to the Third Circuit, the merits of Petitioner's claims cannot be reached unless equitable tolling applies.  *See Warden Baylor Womens*, 2024 WL 808971, at *1, 6-7.

### A.    Petitioner's Arguments to Support Equitable Tolling

Petitioner attempts to establish her diligence by claiming that:  (1) on January 5, 2009, she filed a pro se Notice of Appeal from her conviction; (2) on January 7, 2009, she sent a letter to trial counsel requesting help with the appeal; (3) in May 2009, she spoke with the prison law library's paralegal, prompting her to directly contact the Superior Court Prothonotary to determine the status of her motion for modification and to obtain documents; (4) she would have filed a pro se appeal from the denial of the motion for sentence modification if counsel had informed her of the denial or if she had learned about it sooner; (5) on November 9, 2009, she had her legal documents confiscated for violating prison policy by giving legal documents to another inmate for help;[6] (6) in March 2010 and February 2014, she requested documents from the Superior Court Prothonotary because her legal documents were periodically confiscated; (7) in April 2011, she had her mother send the trial court a letter requesting a sentence reduction; (8) in December 2011, she submitted five requests for a list of medications she had been prescribed and the dates she had taken them because she was working on her case; (9) on February 2, 2012, she signed a Release of Information Authorization for counsel to receive copies of her mental health reports and medications and, around that same time, sent counsel a letter seeking help with her legal proceedings; (10) on April 1, 2014, she filed a pro se Motion for Postconviction Relief; (11) she attended her state postconviction evidentiary hearings; (12) through counsel, she appealed the denial of her state postconviction motion; (13) on January 15, 2018, she filed her pro se habeas Petition thirteen days after the Delaware Supreme Court affirmed the denial of her postconviction motion; (14) on July 6, 2021, she filed a pro se notice of appeal from the Court's denial of her

---

[6]    The documentation provided to support this claim indicates that the "Disciplinary Report" Petitioner received was for bartering.  The documentation says the paperwork was confiscated from the other inmate's cell, but it does not indicate if the paperwork was returned to Petitioner.  (D.I. 49 at 22).

habeas Petition; and (15) she consulted with her court-appointed attorney to prepare and file pleadings in the Third Circuit.  (D.I. 49 at 6-8).

Petitioner further asserts that her housing conditions caused her to be "unable to research and pursue her legal rights."  (D.I. 49 at 8).  Specifically, Petitioner claims that when she was housed in the Maximum Security Unit ("MSU"), also known as Unit 8, "she had no access to the law library."  (D.I. 49 at 8).  She also claims that when she was moved from MSU/Unit 8 to another unit, her personal property was taken, and it would sometimes take weeks before it was returned. (D.I. 49 at 8).  The parties agree, and the record supports the finding that Petitioner was in MSU/Unit 8 during the relevant following periods of time:

a.    December 2, 2008 to December 6, 2008;
b.    April 14, 2009 to June 5, 2009;
c.    October 11, 2010 to October 25, 2010;
d.    January 29, 2011 to February 2, 2011;
e.    February 7, 2011 to February 17, 2011;
f.    March 26, 2011 to May 23, 2011;
g.    May 25, 2011 to July 12, 2011;
h.    November 16, 2011 to November 17, 2011;
i.    December 24, 2011 to January 4, 2012; and
j.    May 24, 2013 to May 28, 2013.

(D.I. 46; D.I. 46-1; D.I. 46-2 at 1-16; D.I. 49 at 9).  Petitioner further claims that she is entitled to equitable tolling from September 17, 2013 until she filed her habeas Petition on January 15, 2018 because she was classified as "Mandatory Prison Override ('MPO')" from September 17, 2013 through September 17, 2018 due to an attempted escape.  (D.I. 49 at 9-10).  Under the MPO classification, Petitioner alleges she "was held in isolation with no privileges and without access to the law library" regardless of where she was housed.  (D.I. 49 at 9).

Petitioner also asserts that her mental health affected her ability to work on her case. (D.I. 49 at 10-13).  She states that prison psychiatrists diagnosed her with Post-Traumatic Stress

Disorder, Psychology Spectrum Disorder, Impulse Control Disorder and Depression, and prescribed her antipsychotic and antidepressant medications between 2007 and 2014. (D.I. 49 at 10). Petitioner claims her medications "severely impaired her mental functioning and psychomotor skills by making her drowsy and nauseous all the time and by placing her in a semi-conscious state where she could barely stay awake or walk and where it was impossible for her to do any legal work on her case." (D.I. 49 at 11). She further claims that "[t]here were many days she was unable to get out of bed" and that the medications caused diarrhea. (D.I. 49 at 11). Petitioner specifically identifies various events between May 26, 2009 and August 9, 2011, but nothing thereafter, to support her argument that her mental health should be considered when analyzing whether she diligently pursued her rights. (D.I. 49 at 11-14).

Petitioner also generally asserts that there were other periods that she did not have access to the prison law library due to prison lockdowns, flu outbreaks, bad weather, the prison paralegal leaving resulting in the law library being closed for a month in 2013, and a hostage crisis at another prison resulting in the law library being closed for a month in 2017. (D.I. 49 at 10). Lastly, Petitioner claims she was young, uneducated, indigent, had to rely on inmates for advice, and was not provided information about her legal rights by the prison. (D.I. 49 at 14).

### B.    Analysis of Whether Petitioner Diligently Pursued Her Rights

The Third Circuit Opinion identified trial counsel's conduct as something that "could constitute an extraordinary circumstance," and instructed the Court to determine if Petitioner had been reasonably diligent in pursuing her rights. *See Warden Baylor Womens*, 2024 WL 808971, at *6-7. To support her claim for equitable tolling, Petitioner has identified various factors to consider in determining if she diligently pursued her rights – housing conditions, mental health, limited library access, age, education, lack of legal knowledge, and indigency. Petitioner does not

9

argue that these factors are extraordinary circumstances,[7] however, her argument comingles the concepts of extraordinary circumstances and diligence. Nevertheless, in line with the Third Circuit's directive, Petitioner's claim for equitable tolling can be decided based on the diligence prong.

### 1. January 4, 2012 through May 24, 2013 and May 28, 2013 through September 17, 2013

Upon thorough review of the detailed record, the Court concludes Petitioner has failed to demonstrate reasonable diligence in pursuing her rights. Petitioner's lack of diligence is most apparent when reviewing the periods from January 4, 2012 through May 24, 2013 and May 28, 2013 through September 17, 2013.[8] During this time, Petitioner was housed in the prison general population and was permitted to do research in the prison law library.[9] (D.I. 40 at 8-9; D.I. 46-2 at 9-11). Additionally, Petitioner's health records indicate that she was relatively stable and in good mental health during this time.[10] (*See generally* D.I. 44). Yet, during this time period, the only steps Petitioner indicates she took to pursue her rights were: (1) on February 2, 2012, signing a release in an effort to obtain copies of her mental health reports and medications;

---

[7]    In her Memorandum Addressing the Applicability of Equitable Tolling, Petitioner explicitly identifies only two extraordinary circumstances that prevented the timely filing of her habeas Petition: (1) trial counsel's advice to withdraw her direct appeal; and (2) trial counsel's "complete abandonment." (D.I. 49 at 14-16).

[8]    Petitioner's Motion for an Evidentiary Hearing indicates the second time period ended September 13, 2013. (D.I. 40 at 9). The Department of Corrections ("DOC") records indicate that it ended September 17, 2013. (D.I. 46-2 at 9). Nevertheless, the distinction is immaterial to the Court's conclusion.

[9]    The Court's analysis is not intended to suggest that housing placements outside the general population constitute extraordinary circumstances. See Section III.C.1 below for additional details regarding Petitioner's housing conditions.

[10]    As with housing, the Court's analysis is not intended to suggest that Petitioner's periods of more serious mental health issues constitute extraordinary circumstances. See Section III.C.2 below for additional details regarding Petitioner's mental health.

(2) around February 2, 2012, sending trial counsel a letter seeking help with her legal proceedings; and (3) beginning "to study and research her legal options." (D.I. 49 at 7; D.I. 40 at 9). Petitioner did not file either a state motion for postconviction relief or federal habeas petition during this time – in fact, she did not file her habeas Petition until more than four years after this period ended. The Court does not find Petitioner's actions sufficient to establish reasonable diligence over the course of a continuous period of one year, four months, and twenty days, let alone followed four days later by another consecutive period of more than three months.

Nor does the Court find a nexus between trial counsel's conduct in 2008 and 2009 and Petitioner's failure to act during this time period several years later. *See Wallace v. Mahanoy*, 2 F.4th 133, 148 (3d Cir. 2021) (holding petitioner has burden "to establish that extraordinary circumstances prevented him from filing a habeas petition for the ***entirety*** of the period for which he has sought tolling" (emphasis added)); *Ross,* 712 F.3d at 803 (providing that "for a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances [the petitioner] faced and the petitioner's failure to file a timely federal petition"). Petitioner knew her direct appeal had been withdrawn and was aware as early as May 2009 that her motion for reduction of sentence had been denied and had not been appealed. This is not a situation where Petitioner was misled or mistakenly believed her attorney had filed an appeal or was pursuing her rights. *Compare Schlueter*, 384 F.3d 69 (holding equitable tolling not warranted based on attorney's representation that he *would*, as opposed to misrepresenting that he *did*, file state motion for postconviction relief) *with Ross*, 712 F.3d 784 (holding equitable tolling warranted where petitioner was misled to believe attorney was pursuing appeal). Accordingly, Petitioner has failed to demonstrate a causal connection between her attorney's conduct in 2008 and 2009 and her failure to file a habeas Petition at any time between January 4, 2012 and September 17, 2013.

Petitioner's claims regarding the confiscation of her legal documents also do not help her demonstrate reasonable diligence in pursuing her rights. The only specific reference Petitioner makes to her documents being confiscated is an incident in November 2009, more than two years before the time frame focused on herein. Additionally, Petitioner does not identify any specific documents that were taken. The only other reference she makes to her property being taken is her general statement that "every time she was moved from Unit 8 to another unit, her personal property, including her legal documents, was taken from her and ***sometimes*** it would take weeks before this property was returned to her." (D.I. 49 at 8 (emphasis added)). The records do not indicate, however, that Petitioner was in MSU/Unit 8 at any time from January 4, 2012 through May 24, 2013. Although she was briefly placed in MSU/Unit 8 between May 24, 2013 and May 28, 2013, she does not say what, if any, pertinent documents were taken from her when she left MSU/Unit 8 on May 28, 2013, or that, on that particular occasion, it took a significant amount of time to get any such documents back. These arguments, therefore, do not help Petitioner establish that she was reasonably diligent.

Given these circumstances, the remaining factors Petitioner seeks consideration of in evaluating her diligence – limited library access unrelated to housing, age, education, lack of legal knowledge, and indigency – are also insufficient to warrant equitable tolling during this time period. *See Martin*, 23 F.4th at 273 (declaring "lack of legal knowledge or legal training does not alone justify equitable tolling"); *Hall v. Emig*, C,A. No. 20-1291 (MN), 2023 WL 5135866, at *4 (D. Del. Aug. 10, 2023), *certificate of appealability denied sub nom. Hall v. Delaware*, No. 23-2596, 2024 WL 823260 (3d Cir. Feb. 9, 2024) (providing limited access to law library and legal materials is routine aspect of prison life, not extraordinary circumstance warranting equitable tolling); *Evans v. Carroll*, C.A. No. 03-947-SLR, 2005 WL 196554, at *4 (D. Del. Jan. 19, 2005)

(finding fact that petitioner was nineteen when convicted does not demonstrate how some external factor prevented him from pursuing his claims or from timely filing federal habeas application); *see also Gonzalez v. United States*, 918 F. Supp. 2d 287, 290 (D. Del. 2013) (citing *Garrick v. Vaughn,* 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003) (collecting cases) for principle that "[r]outine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances . . . do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations"). Furthermore, Petitioner's pro se filings in both state and federal court demonstrate her competency in pursuing her legal rights regardless of the factors identified.

The Court reiterates that Petitioner did not file her habeas Petition for almost nine years after her conviction became final and almost eight years after her AEDPA limitations period lapsed. Petitioner's failure to at least file a protective habeas petition at some point, including during the January 4, 2012 and September 17, 2013 time frame focused on, demonstrates a lack of diligence. *See Wallace*, 2 F.4th at 149-50 (holding petitioner's failure to file protective federal habeas petition during pendency of his state postconviction proceeding, as described by the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. at 416–17, undermined his diligence claim).

For these reasons, the Court concludes that Petitioner has failed to establish that she pursued her rights with reasonable diligence. Therefore, equitable tolling cannot be applied to excuse the untimely filing of her habeas Petition.

### C.    Additional Findings That Support the Court's Conclusion

Although the foregoing reasons are sufficient for the Court to reject Petitioner's claim for equitable tolling, the Court nonetheless provides additional findings, not limited to the time period focused on above, to support its conclusion.

1.    **Housing Conditions and Access to the Prison Law Library**

Petitioner asserts that when she was housed in MSU/Unit 8 and when she was classified as MPO, she had "no access to the law library." (D.I. 49 at 8, 9). The record, however, indicates that even when Petitioner was in MSU/Unit 8 and classified as MPO, she was not denied all access to information from the law library, just physical access. The Delores J. Baylor Women's Correctional Institution Inmate Handbook provides that "Inmates housed in Unit 8 will use the facility mail to correspond with the Law Library."[11] (D.I. 53-4 at 9). The record establishes that Petitioner utilized these procedures to communicate and obtain information from the Law Library. (D.I. 53-1). In August 2015, Petitioner filed a grievance form describing her correspondence with the library and requesting to go in person. (D.I. 53-1 at 1, 4). The record includes correspondence between Petitioner and the library while she was housed in MSU/Unit 8. (D.I. 51-1 at 5-12). Furthermore, Petitioner indicates she did visit the Law Library in May 2009, the entire month of which she was housed in MSU/Unit 8. (D.I. 40 at 11; D.I. 49 at 6, D.I. 46-2 at 15).

The same 2015 grievance and correspondence between Petitioner and the law library occurred during the time Petitioner was classified as MPO, thus indicating that Petitioner was communicating with the law library and obtaining research assistance while under that classification. (D.I. 53-1). The record also demonstrates that, although housed in MSU/Unit 8 from September 21, 2013 through May 13, 2014 ***and*** classified as MPO at that time, Petitioner

---

[11]    The Court notes that the Handbook submitted is the 2014 version and, therefore, was not the Handbook applicable during all of the relevant time period. Nevertheless, there is nothing in the record to indicate that this procedure was different prior to 2014. Additionally, the procedure described in the Handbook is consistent with the 2017 and 2023 versions of Policy 5.1A of the DOC Policy/Procedure for Baylor Women's Correctional Institution, both of which provide that it is the policy "to ensure offenders have access to a law library and legal assistance" and that "[o]ffenders will correspond with the Law Library by way of in-house mail" and "[o]ffenders who are detentioners will be dealt with primarily by correspondence." (D.I. 53-2 at 1; D.I. 53-3 at 1).

was nonetheless able to file her state pro se motion for postconviction relief on April 1, 2014. (D.I. 46-2 at 9, 30). The record further provides that Petitioner was housed in MSU/Unit 8 **and** classified as MPO at the time she filed her pro se habeas Petition on January 15, 2018. (D.I. 46-2 at 30, 77 (July 10, 2018 Report indicating Petitioner had been in Unit 8 for ten months)). These facts undermine Petitioner's assertion that she had "no library access" when in MSU/Unit 8 or classified as MPO and her claim that said housing and classification prevented her from pursuing her legal rights. *See Gonzalez*, 918 F. Supp. 2d at 290 (holding prisoner's limited access to law library is routine aspect of prison life, and generally insufficient to trigger equitable tolling absent causal relationship between limited access and prisoner's late filing). Furthermore, it seems contrary to the spirit of equitable tolling if a limitation of *physical* access to the library imposed because of an attempted escape constituted a reason for excusing the untimely filing of the Petition.

### 2.  <u>Mental Health</u>

Petitioner identifies various times in 2009, 2010, and 2011 in which she claims her mental health impaired her ability to work on her case. (D.I. 49 at 11-13). Beyond 2011, the only mental health related factor Petitioner identifies is that she was prescribed medications – namely Thorazine, Remeron, Zoloft and Effexor – "[f]rom August 10, 2007 to sometime in 2014." (D.I. 49 at 10). The record shows Petitioner stopped taking all medications in 2011. (D.I. 44-1 at 194-195, 202, 220). She was prescribed Zoloft again in September 2013, but discontinued it in May 2014. (D.I. 44-1 at 131, 192-93, 195, 197, 202-03). The record reflects that Petitioner resumed taking Zoloft primarily as a proactive measure because, after her attempted escape, she was being returned to MSU/Unit 8. (D.I. 44-1 at 195, 202-03). Petitioner does not identify any instances of poor mental health after 2011. In fact, Petitioner's mental health records indicate that she was in relatively stable and good mental health from late 2011 on. (*See* D.I. 44-1 at 230; *see generally* D.I. 44). Therefore, even *if* Petitioner's medical issues were considered an extraordinary

circumstance that prevented her from timely filing a petition, she has failed to establish that the condition existed for the entirety of the period for which she seeks tolling.

## IV.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable:  (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484.

The Court has concluded that the Petition is time-barred.  Reasonable jurists would not find this conclusion to be debatable.  Therefore, the Court will not issue a certificate of appealability.

## V.     CONCLUSION

For the reasons discussed above, the Court dismisses the instant Petition as time-barred and denies the relief requested therein without issuing a certificate of appealability.  The Court will issue an Order consistent with this Memorandum Opinion.